In re Dale E. PARKER, Debtor.

No. 03–65272.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

July 21, 2008.

Crystal I. Zellar, Zellar & Zellar, Attorneys at Law, Inc., Zanesville, OH, for Debtor.

### *ORDER ON DEBTOR'S OBJECTION TO CLAIM # 25 OF COUNTRYWIDE HOME LOANS*

C. KATHRYN PRESTON, Bankruptcy Judge.

Before the Court is the Debtor's Objection to Proof of Claim # 25 [of] Countrywide Home Loans, Inc. (Doc. # 69), and the Response thereto (Doc. # 74) filed by Countrywide Home Loans, Inc. ("Countrywide"). The Debtor objects to the Proof of Claim (the "Claim") filed by Countrywide on the basis that it was filed untimely. Countrywide responds that the Debtor is bound by the terms of his confirmed Chapter 13 Plan, which provided for payment of Countrywide's claim as an unsecured claim, and his Objection is barred under the principles of res judicata and judicial estoppel.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the general Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### I. Background.

The facts upon which this dispute may be resolved are not in dispute and can be summarized as follows:

In December 2001, Debtor Dale E. Parker (the "Debtor") entered into a loan transaction with Alliance Funding, and granted a mortgage on his real property located at 14670 Twp. Rd. 201, Corning, Ohio (the "Property"). Alliance, however, failed to record the mortgage. Evidently the loan and mortgage were transferred to Beal Bank, although there is no evidence in the record of the transfer. The Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code together with a proposed Chapter 13 Plan (Doc. # 4) on October 7, 2003. Listed among the unsecured creditors on the Debtor's Schedule F is Beal Bank. In due course, the Clerk of Court issued the Order for Meeting of Creditors, Confirmation Hearing, Combined with Notice Thereof and of Automatic Stays (Doc. # 8), giving notice of, among other things, the deadline of February 18, 2004 for filing of proofs of claim. The Notice was served on all creditors, including Beal Bank.

Judge Charles M. Caldwell entered an order confirming the Debtor's Plan on January 22, 2004. The Plan contained a special provision in regards to the treatment of Beal Bank: Special Provision 17(c) of the Plan specified the manner in which the claim of Beal Bank, stating that:

> The claim of Beal Bank, now known as Bank One, relates to an unrecorded mortgage against the Debtor's residential real estate. As the mortgage remains unrecorded in the Perry County Reorder's Office, the claim shall be paid

as wholly unsecured pro-rata with the other unsecured creditors in the plan. Chapter 13 Plan, ¶ 2(17)(c).

On April 2, 2004, Countrywide Home Loans, as servicer for Beal Bank, filed a Proof of Claim in the amount of $138,830.65 as a secured claim.[1] On May 24, 2004, the Chapter 13 Trustee, Frank Pees, (the "Trustee") filed a Notice of Intention to Pay Claims (Doc. # 26), which included the Claim filed by Countrywide of $138,830.65 and reflecting that it would be paid a dividend of 19% as an unsecured creditor. The Debtor did not file an objection to the Notice. Later, on October 15, 2004, Countrywide filed an Amended Proof of Claim, increasing the amount of the original claim from $138,830.65 to $171,149.58 and changing the classification of the Claim to unsecured. Additionally, on October 27, 2005, Countrywide filed a Supplemental Proof of Claim in the amount of $2,203.20 for postpetition real estate taxes paid by Countrywide. In response to the Amended and Supplemental Proofs of Claim, the Trustee filed a Notice of Intention to Pay Additional Claim (Doc. # 48) reflecting an amount of $141,033.85 due Countrywide, which consists of the amount of the initial Proof of Claim plus the amount of the Supplemental Proof of Claim of Countrywide.[2] Again, the Notice reflected the Trustee's intention to pay Countrywide a dividend of 19%. The Trustee has made distributions to Countrywide after Confirmation of the Plan and until the Debtor filed the Objection to the Claim on April 25, 2008.

---

1. There are no loan documents attached to the Claim, no evidence of the transfer of the loan and mortgage from Alliance to Beal Bank, and, until Countrywide's Response to the Debtor's Objection, nothing in the record to illustrate the relationship between Beal Bank and Countrywide. However, there appears to be no dispute regarding the relationship and present status of all these parties.

2. The Court is unable to discern from the record why the Trustee chose to include the amount of the initial Proof of Claim rather than the amount of the Amended Proof of Claim.

## II. Analysis

The Debtor's position is simple: the Claim was filed after the deadline and, therefore, should be disallowed as untimely. There is no dispute that Countrywide's claim was tardily filed. Furthermore, Countrywide did not seek an extension of the deadline to file its claim. Nor has Countrywide asserted that it lacked notice of the bankruptcy proceeding and of the deadline for filing its Claim. However, Countrywide counters that confirmation of the Plan operates as res judicata, barring the Debtor from objecting to Countrywide's Claim. Countrywide further posits that the Debtor's lack of action in the face of the Trustee's Notice of Intention to Pay Claims invokes the principle of judicial estoppel, prohibiting the Debtor from objecting to Countrywide's Claim at this point in the case.

### A. Res judicata does not bar the Debtor's Objection to the Claim of Countrywide.

It is well established that the provisions of a confirmed plan bind the debtor as well as creditors and all other parties, and operates as res judicata of all justiciable issues, which were or could have been decided at the confirmation hearing. Section 1327(a) of the Bankruptcy Code specifically states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a) (2004).

A claim is barred by res judicata, also known as claim preclusion, if: (1) there has been a final decision on the merits by a court of competent jurisdiction; (2) the subsequent action is between the same parties or their privies; (3) the issue in the subsequent action was or should have been litigated in the prior action; and (4) there is identity between the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997) (citations omitted).

Confirmation of the Debtor's Chapter 13 Plan did not require or result in a determination of the allowance of the Claim. Any issues pertaining to allowance of or the amount of the Claim could not have been litigated during the confirmation process, since the Claim had not yet been filed. Neither the Debtor nor anyone other than Countrywide knew if Countrywide would file a claim or in what amount. *See Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir.1995) (res judicata does not foreclose assertion of a claim that plaintiffs did not have at the time of the prior action).

Similarly, there is no identity between the causes of action. "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir.1992) (citing *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981)). "'[C]onfirmation of a Chapter 13 plan is, in effect, an adjudication of litigation over the issues of the *classification and treatment of claims* provided for in a proposed Chapter 13 plan, and is *res judicata* on those issues.'" *Ford Motor Credit Co. v. Bankr. Estate of Parmenter (In re Parmenter)*, 527 F.3d 606, 609 (6th Cir.2008) (first emphasis added) (quoting *In re White*, 370 B.R. 713, 718 (Bankr.E.D.Mich.2007)).

Furthermore, adoption of Countrywide's theory would render Rule 3002(c) mere surplusage, in violation of a basic tenet of statutory construction that statutes and rules are to be interpreted in a manner that gives effect to each. *Cf. Mor-*

*ton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ("When there are two acts upon the same subject, the rule is to give effect to both if possible .…") (omission in original) (quoting *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939)). In order to participate in distribution under a confirmed Chapter 13 plan, Fed. R. Bankr.P. 3002(a) and 3021 require that creditors file claims. *See also* 11 U.S.C. § 1325 (2004). In this district, the typical chapter 13 plan provides for payment of a specific percentage dividend to unsecured creditors as a class. Under Countrywide's theory, creditors could completely disregard the deadline for filing claims set forth in Rule 3002, or just simply forego filing a claim,[3] yet demand payment of their debt pursuant to the confirmed Chapter 13 plan. As a matter of policy, such a result is untenable, as it would inject significant uncertainty into the confirmation process and debtors' efforts to reorganize their financial affairs. Following Countrywide's theory to its logical extreme, because the plan specifies that unsecured creditors are to be paid a specific dividend, unsecured creditors could file a claim at any time, regardless of the deadlines set by the Bankruptcy Rules, with confidence that they are safe from objection by any party in interest, by virtue of the provisions of the plan. Inasmuch as debtors are often mistaken about the amount of creditors' claims, this would place all parties in interest, including the debtor and the trustee, in a position of uncertainty regarding the effect of the proposed plan, how much would be required to pay claims and how long it would take to consummate the proposed plan. In addition, faced with the possibility that claims could be filed late in the case, the trustee would be uncertain

how much to pay individual creditors at any given time during the case, and when to make distributions. Equally importantly, not knowing if a creditor may file a claim until the last days of a case, it would be difficult if not impossible to determine whether the plan ever meets the requirements of § 1325(a)(4), requiring the debtor to pay *allowed* claims at least the amount they would receive in a liquidation. In fact, a creditor with a significant claim could derail consummation of a debtor's confirmed plan with a late filed claim. Such a result is inconsistent with the goals of the Bankruptcy Code "of obtaining a maximum and equitable distribution for creditors and ensuring a 'fresh start' for individual debtors, which the [Supreme] Court has often said are at the core of federal bankruptcy law." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (citations omitted).

For all these reasons, res judicata does not apply to preclude Debtor's Objection to Countrywide's Claim.

*B.  Judicial Estoppel does not bar the Debtor's Objection to the Claim of Countrywide.*

■ In his *Bankruptcy Evidence Manual,* Bankruptcy Judge Barry Russell explains that,

> Judicial estoppel, also known as the doctrine of inconsistent positions, is a common law principle that "generally operates to preclude a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation." In re Phillips, 124 B.R. 712, 713 (Bkrtcy. W.D.Tex.1991).

**3.**  Indeed, it is not uncommon for creditors to forego filing a proof of claim evincing the

debt owed.

Hon. Barry Russell, *Bankruptcy Evidence Manual*, § 6:1 (2007 ed). The purpose of the doctrine is to "preserve[ ] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1218 (6th Cir.1990) (citation omitted). It "precludes a party from 'playing fast and loose with the courts.'" *Id.* (citation omitted).

■ The following is a brief explanation of judicial estoppel and how it operates within the judicial system:

> Judicial estoppel is an equitable concept with some vagueness in its application, and its application is within the sound discretion of the court. Judicial estoppel must be applied with caution and in the narrowest of circumstances so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement. Judicial estoppel is a concept to be applied with restraint in egregious cases only and with clear regard for the facts of the particular case.
>
> . . .
>
> Judicial estoppel bars changes in *factual* positions and does not extend to inconsistent opinions or legal positions. Judicial estoppel is inappropriate when a party is merely changing its position in response to a change in the law.

28 Am.Jur.2d *Estoppel and Waiver* § 75 (Westlaw through May 2008) (emphasis added) (footnotes omitted). Thus, if the statements or positions of the party against whom judicial estoppel is asserted can be reconciled in some way, estoppel does not apply. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir.2000).

■ The party invoking judicial estoppel must show that: (1) the other party took an inconsistent factual position, under oath, in a prior proceeding, and (2) that position was accepted by the prior court in some fashion. *Teledyne*, 911 F.2d at 1218; *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir.2000). Intentional misconduct is a necessary element. Russell, *supra*, § 6:2. Despite the emphasis in the application of judicial estoppel to factual issues voiced by these courts, the doctrine has been expanded to legal posturing as well. *Id.* (citing *In re Cassidy*, 892 F.2d 637, 642 (7th Cir.1990); *Forty–Eight Insulations v. Aetna Casualty & Sur. Co.*, 162 B.R. 143, 147 (N.D.Ill.1993) (citation omitted)).

It is not clear whether Countrywide is pursuing the doctrine based on a prior factual position or prior legal position of the Debtor, but that is of no consequence, inasmuch as it is clear that judicial estoppel does not apply in this case. The Debtor filed his Chapter 13 Plan, as the Debtor is required to; the Plan proposed treatment for the Claim, as is the purpose of a plan. The Debtor was unable to object to the Claim prior to confirmation, because the Claim had not yet been filed.[4] Furthermore, the basis of the Debtor's Objection to the Claim is not couched in validity of the debt, but rather that the Claim was untimely filed. This being the case, the allowance of the Claim was not a justiciable issue that was or could have been raised at the time of confirmation. Even if the Claim had been filed, or the deadline for filing claims had expired, that discussion need not be had during the confirmation process inasmuch as it is generally

---

**4.** Indeed, as is the custom in this District, and as is in effect required by the Bankruptcy Code, the confirmation hearing was held before the deadline for filing claims had expired.

irrelevant in the context of confirmation of a Chapter 13 plan.

In addition, as discussed above, a creditor must file a claim in order to participate in distribution under the Plan. The Debtor's proposal for payment of the Claim via the Chapter Plan is not a factual or legal statement pertaining to whether the Claim is allowable under provisions of the Bankruptcy Code and Rules. The Debtor's Objection does not conflict with any argument made to achieve confirmation of the Plan. *See In re Hovis*, 356 F.3d 820 (7th Cir. 2004). Finally, Countrywide has not illustrated bad faith or misconduct on the part of the Debtor, necessary for imposition of the doctrine of judicial estoppel.

The fact that the Debtor failed to object to the Trustee's Notices of Intention to Pay Claims also does not avail Countrywide. A filed claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a) (2004). Rules governing an objection to a claim impose unique and discrete requirements. *See, e.g.,* Fed. R. Bankr.P. 3007, Local Bankr.Rule 3007–1. An objection to the Trustee's Notice would not suffice as an objection to a claim. Moreover, the Debtor's failure to object to the Trustee's Notice does not constitute a statement of factual matter under oath, or a legal position inconsistent with the instant Objection to Claim. Again, Countrywide has not illustrated bad faith or misconduct on the part of the Debtor. While it may have been more convenient to all parties involved had the Debtor objected to the Claim more expeditiously, there is no deadline for a debtor, or any other party in interest, to object to claims,[5] and Countrywide has not asserted that any prejudice resulted.

For the foregoing reasons, Debtor's Objection to the Claim of Countrywide Home Loans as servicer for Beal Bank is sustained and the Claim # 25–1 is disallowed.[6]

IT IS SO ORDERED.

5. *See* Fed R. Bankr.P. 3007.

6. Buried in its Response to the Debtor's Objection, almost as an aside, Countrywide requests this Court require an adversary proceeding to determine the extent and validity of its mortgage. This is curious in light of the Amended Claim filed by Countrywide admitting its unsecured status, and correspondence of October 5, 2005, from Countrywide's counsel to the Trustee and Debtor's counsel, wherein Countrywide seemingly admits that the mortgage was avoided. In any case, a request for relief is sought by motion, *see* Fed. R. Bankr.P. 9013, with, among other things, notice of the right to respond and the time period within which to do so. Local Bankr.R. 9013–1 and 9013–3. Of course, Countrywide could file an adversary proceeding to obtain such a determination if it feels compelled to do so.