In re Harold V. SIMMERMAN,
Durinda J. Simmerman,
Debtors.

Harold V. Simmerman, et al., Plaintiffs

v.

Ocwen Financial and Mortgage
Services, Inc., et al.,
Defendants.

Bankruptcy No. 08–34725.
Adversary No. 11–3070.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Dec. 7, 2011.

Charles J. Roedersheimer, Dayton, OH, for Plaintiffs.

Christian E. Niklas, Cincinnati, OH, for Defendants.

**DECISION OF THE COURT:**

**1) DISMISSING PLAINTIFFS' THIRD CAUSE OF ACTION FOR VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT AND PLAINTIFFS' FOURTH CAUSE OF ACTION FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT;**

**–AND–**

**2) DENYING THE REMAINDER OF DEFENDANTS' MOTIONS TO DISMISS**

LAWRENCE S. WALTER, Bankruptcy Judge.

The matter is before the court on two motions for partial dismissal filed by Defendants Ocwen Loan Servicing, LLC ("Ocwen") and U.S. Bank National Association, as Trustee for the registered holders of GSRPM 2004–1, Mortgage Pass–Through Certificates ("the Trust") [Adv. Docs. 11 and 14]. A response was filed by Plaintiff–Debtors Harold and Durinda Simmerman ("the Simmermans") [Adv. Doc. 23]; and Defendants Ocwen and the Trust filed a joint reply [Adv. Doc. 28].

Defendants Ocwen and the Trust (collectively "Defendants") assert that the court should dismiss all but one [1] of the causes of action in the Simmermans' complaint. The Simmermans' complaint contains four causes which can be summarized as follows: 1) violation of 11 U.S.C. § 524(i) by Defendants' attempt to collect funds in this bankruptcy case that have already been paid in a prior one; 2) disallowance of Defendants' proof of claim for failure to establish that they hold or own the note and mortgage at issue; 3) violations of the Equal Credit Opportunity Act (ECOA) based on allegations that Defendants' as-signor misled the Simmermans into signing a mortgage refinancing agreement with terms that differed from those in their original application; and 4) violations of the Fair Debt Collection Practices Act ("FDCPA") by Defendant Ocwen for attempting to collect payments without legal authority and/or that were already made. Defendants assert various theories for dismissal at least some of which are related to the fact that this is not the Simmermans' first bankruptcy case and certain causes of action should have been raised in the prior one.

After careful research and review of the parties' memoranda, the court concludes that two of the Simmermans' causes of action must be dismissed. First, the Simmermans fail to state an ECOA claim against the Defendants because there are no allegations that Defendants were involved in the decision to extend credit to the Simmermans or in establishing the terms of that credit. Consequently, Defendants are not "creditors" to whom the ECOA notice requirements apply. The court further dismisses the Simmermans' fourth cause of action under the FDCPA because the statute of limitations has expired. Defendants' other arguments for dismissal either lack merit or rely on facts outside the complaint. Consequently, in all other respects, the motions to dismiss are denied.

### FACTUAL AND PROCEDURAL BACKGROUND

The Simmermans filed their most recent Chapter 13 bankruptcy petition on September 30, 2008. On February 6, 2011, they filed an adversary complaint against Defendants regarding the loan and mortgage on the Simmermans' residential prop-

---

1. Defendants' motions to dismiss do not address the first count in the Simmermans' complaint for violation of the discharge order pursuant to 11 U.S.C. § 524(i). Instead, Defendants filed answers with respect to that count [Adv. Docs. 13 and 16].

erty at 2670 Hayward Avenue in Dayton, Ohio. Because this matter is before the court on motions to dismiss, the following facts found in the Simmermans' complaint are deemed true.

### A. The Simmermans' Mortgage Loan Refinancing with Bank One

On August 31, 2000, prior to filing any bankruptcy proceeding, the Simmermans entered into a loan agreement with Bank One, N.A. to refinance their variable rate mortgage [Adv. Doc. 1, ¶¶ 7–8]. To apply for the loan, the Simmermans believe they submitted a Uniform Residential Loan Application in which they specifically requested a 30 year fixed rate loan [*Id.*, ¶ 18]. At the time of the loan origination, the Simmermans were told by a loan officer, Michael Scott, that the refinanced loan would be a 30 year loan and that the payment would include escrow fees for insurance and property taxes [*Id.*, ¶¶ 11–13].

The Simmermans were not provided an opportunity to review the loan documents and were simply asked to sign and initial the paperwork at the twenty-minute closing. [*Id.*, ¶¶ 16–17]. At no time during the process or at the closing did Bank One, Michael Scott, or anyone else inform them that their loan application for the 30 year fixed mortgage had been rejected [*Id.*, ¶ 19]. In addition, the Simmermans did not receive any documentation or disclosure of the rejection or why the loan had not been processed [*Id.*, ¶ 20].

The loan the Simmermans actually closed on was a 15 year term note that required a balloon payment of $114,833.02 at the end of the 15 year period [*Id.*, ¶ 15].

### B. The Simmermans' 2002 Bankruptcy Filing and the Purported Assignment of the Mortgage

On July 29, 2002, the Simmermans filed their first of two Chapter 13 bankruptcy petitions in Dayton, Ohio. [*Id.*, ¶¶ 28–29].

The first case, Case No. 02–35519 ("the 2002 bankruptcy case"), was filed to resolve various debts incurred in the Simmermans' business [*Id.*]. The Simmermans were never told when filing their 2002 bankruptcy case that the Bank One loan would require a balloon payment [*Id.*, ¶ 30].

Sometime in 2004, while the 2002 bankruptcy case remained active and the mortgage loan was in default, the Trust allegedly became the assignee of the mortgage deed and owner of the Simmermans' note [*Id.*, ¶¶ 25–26]. The Simmermans believe that the Trust is a private trust established by Goldman Sachs in 2004 to reprocess delinquent mortgage loans in a Goldman Sachs Re–Performing Mortgage ("GSRPM") privately funded securities package [*Id.*, ¶ 43]. Ocwen, a corporation that provides financial services and loan servicing for commercial and residential property loans, serviced the Simmermans' mortgage loan for collection upon the loan being acquired by the Trust [*Id.*, ¶¶ 2, 27].

By the end of the 2002 bankruptcy case, the Simmermans paid over $70,000 on the mortgage claims to Ocwen, Bank One, and/or the Trust even though the Trust and Ocwen could not substantiate that the Trust actually owned the note or had been assigned the mortgage deed [*Id.*, ¶ 31].

On January 24, 2008, the Simmermans received a discharge in the 2002 bankruptcy case [*Id.*, ¶ 32]. The court also entered an order that the Simmermans' real estate mortgage was current effective December 1, 2007 [*Id.*, ¶ 33]. The Simmermans believe that they continued to make all loan payments owed on the mortgage until the date of their second bankruptcy filing [*Id.*, ¶ 34].

### C. The Simmermans' 2008 Bankruptcy Filing

On November 18, 2008, the Simmermans filed their second bankruptcy petition initi-

ating the current Chapter 13 case ("the 2008 bankruptcy case") [*Id.*, ¶ 34]. Subsequently, Ocwen filed a proof of claim and amended proof of claim on behalf of the Trust [*Id.*, ¶¶ 44–45]. Attached to the proof of claim are a note and mortgage deed which identify Bank One as the holder of the note and owner of the mortgage deed with no documentation of Trust ownership by assignment or otherwise nor any endorsement to the Trust [*Id.*, ¶¶ 44–45, 55].

To date, neither the Trust nor Ocwen has provided the Simmermans with documentation that can establish Trust ownership of the Note or the Mortgage [*Id.*, ¶ 47]. Furthermore, neither the Trust nor Ocwen has provided evidence of any endorsement of the Note that would entitle the Defendants to payment on the claim [*Id.*, ¶¶ 55–57].

In addition, the Simmermans believe that neither the Trust nor Ocwen can demonstrate compliance with the Trust terms for acquiring the note or mortgage deed at the time they filed claims in the Simmermans bankruptcy cases [*Id.* ¶¶ 36, 46–50, 56–59]. Trust provisions, more specifically the Pooling and Servicing Agreement ("PSA"), require that the note transfer or endorsement and mortgage assignment occur before a "cut-off date" that is 180 days or less from the date the Trust is established [*Id.*]. The Simmermans do not believe that the Trust or Ocwen can demonstrate compliance with these requirements [*Id.*].

The Simmermans also take issue with aspects of the Defendants' claim filed in the current bankruptcy case which the Simmermans believe was based on incorrect information about the amounts owed on the loan [*Id.*, ¶ 35]. The claim includes a fee for $1,300.42 for fees or other charges that were effectively paid through the first bankruptcy case [*Id.*, ¶¶ 37–41].

## STANDARD FOR DISMISSAL

Defendants request partial dismissal of the Simmermans' complaint under Fed. R.Civ.P. 12(b)(6), incorporated in bankruptcy adversary proceedings by Fed. R. Bankr.P. 7012 for failure of the Simmermans to state claims upon which relief can be granted. To survive a 12(b)(6) attack, the Simmermans' complaint "must contain sufficient factual matter, accepted [by the court] as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (further citation omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The factual allegations provided in the complaint need not be detailed. *Id.; Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Instead, a complaint must only include "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Fed.R.Civ.P. 8(a)(2) (incorporated in bankruptcy by Fed. R. Bankr.P. 7008); *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Nonetheless, the facts provided must be sufficient to raise a right to relief "above the speculative level" and the plaintiff has the obligation to provide more than just "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. *See also Iqbal,* 129 S.Ct. at 1949 (noting that "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements do not suffice").

In assessing the complaint, the court must keep in mind that the purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the plaintiff's claims for relief and not to weigh the evidence. *Perry v. United Parcel Service*, 90 Fed. Appx. 860, 2004 WL 193203, at *1 (6th Cir. Jan. 30, 2004); *Armengau v. Cline*, 7 Fed. Appx. 336, 2001 WL 223857, at *5 (6th Cir. March 1, 2001). "Therefore, when deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." *Armengau*, 2001 WL 223857, at *5. *See also Kostrzewa v. City of Troy*, 247 F.3d 633, 643–44 (6th Cir.2001) (noting that if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Fed.R.Civ.P. 56 and the parties must be provided additional notice and an opportunity to supplement the record).

## LEGAL ANALYSIS

Defendants attack the Simmermans' adversary complaint· based on a variety of theories including, but not limited to, judicial estoppel, lack of standing, and the failure of the Simmermans to demonstrate that the Defendants can be held liable under the statutory causes of action in the complaint. The court will initially deal with what it considers the preliminary issues involving judicial estoppel and the Simmermans' standing to bring causes of action that belong to this bankruptcy estate or a prior one and then proceed with the Defendants' other bases for dismissal.[2]

### A. Judicial Estoppel/Standing

Defendants urge this court to conclude that the Simmermans are judicially estopped from pursuing, or lack standing to pursue, the various causes of action in the complaint because they are estate property. To add more complexity to the argument, some of the causes of action may have arisen before or during a prior bankruptcy case. Consequently, the Defendants' motions to dismiss raise the following questions: 1) should the Simmermans have raised any of the causes of action in their prior bankruptcy case and, if so, are they judicially estopped from raising them in the current one; and 2) do the Simmermans have standing to pursue causes of action that belong to the current bankruptcy estate?

### 1. Causes of Action as Part of Prior (2002) or Current (2008) Bankruptcy Estate

██ The court begins the inquiry with some of the basic tenants of bankruptcy law. When a debtor files a bankruptcy petition, an estate is created that includes, with limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case." 11 U.S.C. § 541(a). Property of the estate encompasses a broad range of assets including a debtor's lawsuits and causes of action that arose prior to the petition filing date. *In re Bailey*, 421 B.R. 841, 848 (Bankr.N.D.Ohio 2009); *Darrah v. Franklin Credit (In re Darrah)*, 337 B.R. 313, 316 (Bankr. N.D.Ohio 2005). In determining when a cause of action arises, the court looks not to when it accrued but whether it is sufficiently rooted in the debtor's pre-bankruptcy past to constitute property of the

---

**2.** Defendants filed separate motions to dismiss, but they contain very similar arguments except with respect to the fourth count in the Simmermans' complaint which is directed only at Ocwen. Consequently, the court will treat the two motions collectively except where noted.

estate. *Mueller v. Hall (In re Parker)*, 368 B.R. 86 (Table), 2007 WL 1376081, at *7–8 (6th Cir. BAP May 10, 2007); *French v. St. Rita's Medical Center*, 2008 WL 3822278, at *3 (N.D.Ohio Aug. 12, 2008). Furthermore, in Chapter 13 cases, the estate also includes assets acquired by a debtor after the commencement of the case but before the case is closed, dismissed, or converted. 11 U.S.C. § 1306(a).

Upon review of the complaint, it becomes clear that the Simmermans' third cause of action, for violation of the Equal Credit Opportunity Act ("ECOA"), arose prior to the Simmermans' 2002 bankruptcy case and consequently, should have been scheduled as part of the 2002 bankruptcy estate. The Simmermans assert that Bank One and its representatives violated the ECOA by failing to provide written notification to the Simmermans that their loan application had been rejected and supplanted with a loan offer including materially different terms [Adv. Doc. 1,¶¶ 85–86]. The critical events creating the potential liability on the part of Bank One, or its assignees, occurred in conjunction with an August 2000 loan closing prior to the Simmermans' first Chapter 13 bankruptcy filing in 2002. [*Id.*, ¶¶ 7–24]. Consequently, the ECOA cause of action is an asset of the Simmermans' 2002 bankruptcy estate.

■ Furthermore, aspects of the Simmermans' fourth cause of action against Defendant Ocwen, for violations of the Fair Debt Collections Practices Act ("FDCPA"), may constitute property of the Simmermans' 2002 bankruptcy estate. The Simmermans claim that Ocwen violated the FDCPA by unlawfully collecting funds from the Simmermans on the mortgage loan without the legal authority to do so [*Id.*, ¶¶ 93–95]. To the extent that the

Simmermans attempt to recoup or base liability on money collected by Ocwen during the 2002 bankruptcy case [*Id.*, ¶ 31], that claim would also be property of the Simmermans' 2002 bankruptcy estate pursuant to 11 U.S.C. § 1306.

■ The remaining causes of action in the complaint include: 1) a violation of 11 U.S.C. § 524(i) for including fees in the Defendants' current proof of claim that were actually paid or discharged in the prior case[3]; 2) disallowance of the Defendants' current proof of claim for failing to demonstrate that Defendants own or hold the note and mortgage; and 3) violations of the FDCPA for Ocwen's attempts to collect funds already paid or without legal authority after the closing of the Simmermans' 2002 bankruptcy case. The court concludes that these causes of action are sufficiently rooted in events that occurred after the Simmermans' 2002 bankruptcy case was closed. Consequently, they constitute assets of the Simmermans' current 2008 bankruptcy estate.

## 2. Insufficient Facts to Determine Whether the Simmermans Are Judicially Estopped from Pursuing Causes of Action Undisclosed in the 2002 Bankruptcy Case

■ Because the Simmermans' third cause of action and aspects of the Simmermans' fourth cause of action constitute property of the Simmermans' 2002 bankruptcy estate, the court must determine whether the Simmermans may litigate these actions in this adversary proceeding. Defendants assert that the doctrine of judicial estoppel bars the Simmermans from pursuing these causes of action because

---

**3.** The Defendants do not attempt to dismiss the Simmermans' first cause of action for violations of § 524(i). Consequently, the cause of action will not be further addressed in this decision.

they were not disclosed during the prior bankruptcy case.[4]

Judicial estoppel is an equitable doctrine which "bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Eubanks v. CBSK Financial Group, Inc.,* 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir.1990)). Its purpose is to prevent "a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id.* Nonetheless, the doctrine should be applied with caution to "avoid impinging on the truth seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Id.*

The Sixth Circuit has concluded that judicial estoppel may apply in bankruptcy to bar a debtor from pursuing a cause of action for his own benefit after the debtor intentionally failed to disclose the cause of action, which was properly part of the bankruptcy estate, in his bankruptcy schedules sworn to under oath. *Id.* at 898. However, the Sixth Circuit has also made clear that judicial estoppel is inappropriate if the failure to disclose the cause of action was inadvertent, such as when a debtor lacks knowledge of the factual basis for the undisclosed claim, or the debtor had no motive to conceal the potential claim. *Id.* at 898–99; *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir.2002).

In the case at hand, application of judicial estoppel is premature. Because this matter is before the court on a motion to dismiss, there are no facts before the court from which to determine what was disclosed in the prior Chapter 13 case. Furthermore, the court cannot determine, based solely on allegations in the complaint, whether any failure to disclose in the prior case was inadvertent or without motive. Consequently, Defendants' argument for dismissal lacks merit.

### 3. The Simmermans Have Standing to Pursue Causes of Action Belonging to the Current (2008) Bankruptcy Estate

Even if the Simmermans' are not judicially estopped from pursuing causes of action from the prior bankruptcy case, those causes of action, along with all of the others, became property of the 2008 bankruptcy estate upon the second bankruptcy filing. The question becomes whether it is the Simmermans or the Chapter 13 Trustee who has standing to pursue causes of action belonging to the current Chapter 13 estate.

Although a debtor's causes of action become estate property upon filing a Chapter 13 bankruptcy petition, it is less clear who has the power to pursue them. The lack of clarity stems from the fact that the Bankruptcy Code vests the Chapter 13 debtor with some but not all of the powers of a trustee. *See Smith v. Rockett,* 522 F.3d 1080, 1081 (10th Cir.2008). *See also* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Ed., § 54. 1, at ¶ 2, Sec. Rev. May 24, 2004, www.Ch13 online.com. For example, a Chapter 13 debtor, unlike a Chapter 7 debtor, remains in possession of estate property except as provided in a confirmed plan or order confirming a plan. 11 U.S.C. § 1306(b). Fur-

---

4. Defendants also urge the court to determine that the Simmermans' causes of action "were discharged" in the prior case. However, the causes of action are assets and not debts. Consequently, they are not discharged.

thermore, the Chapter 13 debtor, unlike a Chapter 7 debtor, is vested with the trustee's powers under 11 U.S.C. § 363(b) and (d) to use, sell or lease property of the estate. 11 U.S.C. § 1303. Thus, while the Bankruptcy Code does not specifically address the issue of who has the authority to commence or continue a Chapter 13 debtor's lawsuits, "the four [now five with *Rockett* ] circuit courts to consider this issue have all concluded that Chapter 13 debtors have standing to bring claims in their own name on behalf of the bankruptcy estate." *Rockett,* 522 F.3d at 1081 (citing cases).

The Sixth Circuit is not one of the circuit courts that has addressed whether a Chapter 13 debtor has standing to pursue causes of action belonging to the bankruptcy estate. Nonetheless, a district court facing the issue concluded that the Sixth Circuit would follow the other circuits and hold that a Chapter 13 debtor has standing to bring such lawsuits. *Johnson v. Interstate Brands Corp.,* 2008 WL 152895, at *6 (W.D.Tenn. Jan. 14, 2008). That sentiment was more recently echoed by the Sixth Circuit Bankruptcy Appellate Panel which concluded that the Sixth Circuit would grant a Chapter 13 debtor derivative standing to pursue avoidance actions based, in part, on the fact that the debtor has more power over estate assets and a better ability to pursue lawsuits than a Chapter 13 trustee. *Countrywide Home Loans v. Dickson (In re Dickson),* 427 B.R. 399, 405–06 (6th Cir. BAP 2010) *aff'd on other grounds* 655 F.3d 585 (6th Cir. 2011).

This court agrees with these assessments of the Sixth Circuit's likely determination of the issue. Consequently, the court concludes that the Simmermans have standing to pursue the causes of action in the complaint on behalf of the current bankruptcy estate and the Defendants'

motion to dismiss the Simmermans' claims based on a lack of standing is denied.

**B. "Defective Legal Theories"**

The court now turns to the Defendants' remaining arguments for dismissal including their general assertion that the Simmermans' causes of action are based on "defective legal theories." According to Defendants, the complaint inappropriately focuses on the Simmermans' mortgage closing with Bank One and the allegation that the Simmermans were "rushed" or "duped" into signing a mortgage refinancing agreement that had different terms than what they had originally requested in their application. Defendants argue that the Simmermans cannot claim that they were misled during the closing when they could have read the documents and chosen not to sign them citing, among other cases, *Sheet Metal Workers Int'l Ass'n, Local No. 33 v. Tate,* 65 Ohio Misc.2d 48, 640 N.E.2d 1219 (Ct.Com.Pl.1993) (involving an employer's claim of misrepresentation in a collective bargaining agreement), *McCuskey v. Budnick,* 165 Ohio St. 533, 138 N.E.2d 386 (1956) (involving a claim of fraudulent inducement to sign a release), and *Stonecreek Properties Ltd. v. Ravenna Savings Bank,* 2004 WL 1559725 (Ohio Ct.App. July 9, 2004) (involving claims of breach of contract and negligent misrepresentation in a financing agreement).

While the Defendants' arguments and case citations might be relevant if the Simmermans claimed common law fraud or misrepresentation, the Simmermans' complaint is bereft of such claims. These defensive arguments simply do not engage the specific causes of action that actually appear in the complaint such as the Defendants' alleged violations of federal statutory provisions or their failure to prove they own or hold the Simmermans' note and mortgage. Because Defendants' argu-

ments fail to attack the sufficiency of the *actual* claims in the complaint, these arguments do not form a basis for dismissal.

### C. Second Cause of Action: Disallowance of Claim

 Next, the Defendants attack the complaint's second cause of action for disallowance of Defendants' proof of claim. In the complaint, the Simmermans object to the Defendants' proof of claim asserting it should be disallowed because Defendants have failed to establish that they own or hold the Simmermans' note and mortgage [Adv. Doc. 1, ¶¶ 68–83]. Certainly it is true that a debtor may object to a proof of claim when the debtor has a valid basis for questioning the creditor's alleged ownership of the claim or the enforceability of the claim against the debtor outside of bankruptcy. *See* 11 U.S.C. § 502. *See also Veal v. American Home Mortgage Servicing, Inc. (In re Veal)*, 450 B.R. 897, 922 (9th Cir. BAP 2011) (holding that a debtor may challenge a party's standing to file a proof of claim at which point the party must show that it is a creditor or the creditor's authorized agent in order to obtain the benefits of Fed. R. Bankr.P. 3001(f)'s "prima facie evidence" provision); *In re Wells*, 407 B.R. 873, 882 (Bankr.N.D.Ohio 2009).

Nonetheless, Defendants raise two arguments in support of the dismissal of the Simmermans' claim objection. First, the Defendants again raise the doctrine of judicial estoppel asserting that it bars the Simmermans from challenging the Defendants' standing to file the proof of claim. Second, the Defendants argue that the Simmermans lack standing to object to the proof of claim based on deficiencies in the assignment to the Defendants. For the reasons cited below, the court concludes that both arguments lack merit as a basis for dismissal.

### 1. Judicial Estoppel Does Not Bar the Simmermans from Objecting to Defendants' Proof of Claim

 Defendants raise the judicial estoppel doctrine for the second time but in a slightly different manner. Defendants argue that the Simmermans should be "judicially estopped" from challenging the Defendants' lack of documentation to support their ownership of the proof of claim because the Simmermans failed to raise the issue in the prior 2002 bankruptcy case. Defendants assert that the Simmermans received a notice of a change in servicer in 2004 while the 2002 bankruptcy case remained active. Instead of challenging Defendants' documentation at that time, the Simmermans continued to pay on their mortgage loan to the new servicer. According to Defendants, this inaction coupled with continued payments amounts to an acceptance of Defendants' proof of claim in the prior case and, consequently, the Simmermans are "judicially estopped" from contesting the proof of claim in the current case.

In order to make this argument, Defendants rely on factual assertions that do not appear in the Simmermans' complaint including that the Simmermans received a notice of a change of mortgage servicer in 2004 that should have prompted them to take action in the first bankruptcy case. Neither these facts nor the specific details of the alleged notice are part of the complaint and are, consequently, not an appropriate basis for dismissal. However, even assuming that such facts were found in the complaint, the Defendants fail to meet the requirements for the application of judicial estoppel.

 As noted previously, judicial estoppel is an equitable doctrine intended to prevent a "party from abusing the judicial process through cynical gamesmanship, achieving success on one position,

then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir.1990). To invoke the doctrine, a party must show that "the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Id. See also Burnes v. Pemco Aeroplex Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002) (noting that "judicial estoppel is applied to the calculated assertion of divergent sworn positions"). Furthermore, intentional misconduct is a necessary element. *In re Parker,* 391 B.R. 411, 416 (Bankr.S.D.Ohio 2008); *In re Trans World Airlines, Inc.,* 261 B.R. 103, 111 (Bankr.D.Del.2001). Indeed, the assertion of an inconsistent position in the prior action does not alone trigger the application of judicial estoppel. *Trans World Airlines,* 261 B.R. at 111. "Rather, the self-contradiction must be used as a means of obtaining an unfair advantage." *Id.*

To support the applicability of judicial estoppel, Defendants rely on the Simmermans' inaction upon receiving notice of a change in servicer rather than any unequivocal and intentional position taken under oath. Furthermore, the Defendants do not explain how the Simmermans' inaction in the prior bankruptcy case amounts to an intentional attempt to gain an unfair advantage. Indeed, the Simmermans' inaction, if the complaint's allegations are true, seems to have resulted in a serious disadvantage to the Simmermans in the form of continued payments on the mortgage claim to the wrong party during the first bankruptcy case.

Defendants point to no facts in the complaint to support the type of "gamesmanship" to which judicial estoppel would apply. Consequently, Defendants' argument is without merit.

**2. The Simmermans Have Standing to Challenge the Defendants' Right to Enforce the Mortgage and Note**

▮ Although not fully developed in the motion to dismiss, the Defendants further assert that the Simmermans "lack standing" to challenge the Defendants' proof of claim to the extent that the challenge is based on deficiencies in the assignment of the note and mortgage from Bank One to Defendants. To make the argument, Defendants rely on the Sixth Circuit decision of *Rogan v. Bank One, N.A. (In re Cook),* 457 F.3d 561 (6th Cir. 2006). After careful review of that decision, as well as other recent opinions including that of Judge Humphrey in *In re Smoak,* the court concludes that the Defendants argument is ultimately without merit and their reliance on the *Cook* decision is misplaced.

▮ The court begins by noting that only a real party in interest may file a proof of claim in a debtor's bankruptcy case which, pursuant to Fed. R. Bankr.P. 3001(b), is the creditor entitled to payment on a claim or the creditor's authorized agent at the time the bankruptcy petition is filed. *See In re Smoak,* 461 B.R. 510, 516–18 (Bankr.S.D.Ohio2011); *Densmore v. Litton Loan Servicing (In re Densmore),* 445 B.R. 307, 311 (Bankr.D.Vt. 2011); *Wells,* 407 B.R. at 882. The real party in interest with respect to a mortgage proof of claim "is the party entitled to enforce the note and its accompanying mortgage." *Smoak,* 461 B.R. at 517. The court must look to applicable nonbankruptcy law to determine who is entitled to enforce the promissory note. *Id.*

▮ In *Smoak,* Judge Humphrey describes how an entity becomes entitled to enforce a promissory note as a "holder" under the Uniform Commercial Code (UCC) as adopted in Ohio:

Under Ohio law, the holder of a negotiable instrument, including a promissory note, has the right to enforce it. Ohio Revised Code § 1303.31(A)(1) [UCC 3–301]; *In re Foreclosure Cases*, 521 F.Supp.2d 650, 653 (S.D.Ohio 2007); *Nat'l City Mtge. Co. v. Piccirilli*, 2011 WL 3819795 (Ohio Ct.App. Aug. 24, 2011).... Ohio Revised Code § 1301.01(T)(1) [now § 1301.201(B)(21)] [UCC 1–201] defined "holder" with respect to a negotiable instrument as either: a) a person in possession of the instrument if the instrument is payable to bearer; or b) the person identified in the instrument when that person is in possession of the instrument if the instrument is payable to an identified person.

*Smoak*, 461 B.R. at 517. In other words, the holder of a promissory note becomes so by having physical possession of a note made payable to that person or physical possession of a note made payable to bearer through an endorsement in blank. *Id.; Wells*, 407 B.R. at 879. Because the holder of the promissory note is entitled to enforce the note and receive payment, it is generally the holder, or the holder's authorized agent, that is the real party in interest for filing a mortgage proof of claim in a bankruptcy case.[5] *See Smoak*, 461 B.R. at 521–22.

■ Significantly, the holder of the note may differ from the owner of the note. *Id.* at 522–23 (noting that while Article 3 of the UCC establishes the person entitled to enforce a promissory note and receive payment, Article 9 addresses who has property interests in a negotiable instrument). *See also Veal*, 450 B.R. at 909–10 (noting that "Article 3 does not

necessarily equate the proper person to be paid with the person who owns the negotiable instrument"). While a debtor has the right to challenge whether the creditor filing a proof of claim is the holder of the note, a debtor generally lacks standing to challenge who the owner of the note is because it does not impact who is entitled to enforce the note and who may file the proof of claim. *Smoak*, 461 B.R. at 518 (noting that the debtor "need not be concerned with who the owner of the Note is, but only that the payments are being delivered to a person with the right to enforce the Note"); *Veal*, 450 B.R. at 912 (noting that the maker of the note "should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note").

Turning to the arguments, Defendants assert that the Simmermans' second cause of action for disallowance of the claim must be dismissed because these debtors "lack standing to challenge transfers of the note and mortgage or to challenge any entity's compliance with the pooling and servicing agreement." [Adv. Docs. 11 and 14, p. 6]. Defendants are correct, in part. In *Smoak*, the court held that debtors lack standing to challenge whether the transfer of a note and mortgage was invalid for failure to comply with the terms of a pooling and servicing agreement ("PSA"). *Smoak*, 461 B.R. at 518–21. The court's determination was based on the fact that the debtors were not parties to or beneficiaries of the PSA and neither the transfer nor noncompliance with the PSA affected who was entitled to *enforce* the promissory note. *Id. See also Wells*, 407 B.R. at 880 (noting that an attempt to assign a note

---

**5.** Article 3 of the UCC provides other methods of becoming entitled to enforce the note without being a holder or without having physical possession. *See* Ohio Rev.Code § 1303.31;

*Veal*, 450 B.R. 897, 910 n. 22 and 911–12. However, these methods are more uncommon and were not raised by the parties on dismissal.

may create a claim to ownership of that note, but does not transfer the right to enforce the note).

A somewhat similar conclusion was reached by the Sixth Circuit in *Cook* when it concluded that a bankruptcy trustee lacked standing to avoid a mortgage based on the failure of the assignee to follow a trust agreement's requirement that the mortgage assignment be recorded. *Cook*, 457 F.3d at 567. The Sixth Circuit noted that recording the assignment was not a requirement under applicable state law[6] to perfect the lien as long as the original mortgage was recorded. *Id.* Consequently, while the failure to record the mortgage assignment that is only required by the trust agreement may impact the relationship between the parties to the agreement, it did not impede the ability to enforce the mortgage against third parties like the trustee of the bankruptcy estate. *Id.* at 567–68.

While *Cook* and *Smoak* demonstrate the limits on a debtor's ability to challenge third party agreements affecting ownership of a note and mortgage, these cases differ from the present dispute in one significant way. In both *Cook* and *Smoak*, the entity who filed the mortgage proof of claim was undisputedly the holder of the promissory note, or an agent thereof, with the right to enforce the note against the debtors. *See Cook*, 457 F.3d at 565–66 (noting that Bank One had possession of

the promissory note endorsed in blank); *Smoak*, 461 B.R. at 516–18 (noting that the parties stipulated to the trust's status as the holder, a status obtained through possession of the note and an endorsement in blank). Because the *Cook* and *Smoak* defendants were able to demonstrate that they were "holders" under Article 3, their standing to file mortgage proofs of claim as the real parties in interest was clear.

 The same cannot be said for the Defendants in this case. In the complaint, the Simmermans assert that the Defendants have failed to demonstrate standing to file their proof of claim because the documentation attached to the proof of claim does not bear Ocwen or the Trust's name nor any endorsement. [Adv. Doc. 1, ¶¶ 73–77 and Exs. A–B]. With this cause of action, the Simmermans legitimately question whether Defendants are the real parties in interest to file a proof of claim.[7] Resolution of the issue will likely require a physical examination of the original promissory note as well as any endorsements to determine whether Defendants were "entitled to enforce the note" at the time they filed the mortgage proof of claim. *See Veal*, 450 B.R. at 911. *See also Densmore*, 445 B.R. at 312 (noting that in order to file a proof of claim, a creditor must have standing and be entitled to enforce its rights under the note and mortgage at the time of the filing). Because the Simmermans raise a legitimate basis for disallow-

---

6. Kentucky law was the applicable state law examined in *Cook*, 457 F.3d at 567.

7. The Simmermans further allege that the transfer of the note and mortgage to the Trust failed to comply with the terms of a pooling and servicing agreement (PSA) [Adv. Doc. 1, ¶¶ 46–50]. As recognized in *Smoak*, debtors lack standing to challenge the ownership of the note and mortgage based on the failure to comply with the terms of a third party PSA nor is this a basis for objecting to a proof of claim. 461 B.R. at 518–23. Nonetheless, the

Simmermans' second cause of action remains valid because it does not clearly rely on these particular factual allegations, but, instead, appears to be based on the failure of the Defendants to attach documentation to the proof of claim demonstrating that that they are entitled to enforce the note [Adv. Doc. 1, ¶¶ 68–83]. Consequently, the court will not dismiss the Simmermans' claim, but warns the Simmermans to take heed of the *Smoak* decision and understand the limits of this cause of action.

ance of Defendants' proof of claim, the cause of action will not be dismissed.

### D. Third Cause of Action: Violations of the Equal Credit Opportunity Act

■ Next, the Defendants take issue with the Simmermans' third cause of action for alleged violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* According to the complaint, the violations occurred in connection with the refinancing of the Simmermans' loan in August of 2000 [Adv. Doc. 1, ¶¶ 7–8]. The complaint includes no allegations that Defendants were in any way parties to or involved in extending the loan. Nonetheless, the Simmermans assert that Defendants can be held liable as assignees because they "regularly extend consumer credit" and knew or should have known of the violation through Bank One's loan files in Defendants' possession [*Id.,* ¶¶ 24, 86–88].

Defendants urge dismissal arguing that the ECOA does not apply to them because they are only assignees who were not involved in the original loan closing and, consequently, are not "creditors" as that term is used in the ECOA. The Defendants further assert that the statute of limitations for an ECOA cause of action has expired and that the res judicata effect of the confirmed plan would prevent the Simmermans from pursuing the claim. After careful analysis discussed in more detail below, the court concludes that Defendants are not "creditors" to whom the ECOA applies and, consequently, the claim is dismissed without the need to reach the other issues.

Before turning to why assignees like the Defendants are not "creditors" under the ECOA, the court believes it is helpful to provide some background on the relevant provisions of the Act. The ECOA makes it unlawful for creditors to discriminate against applicants for credit based on race, color, religion, national original, sex, marital status or age. 15 U.S.C. § 1691(a). More relevant to this case, the ECOA also requires that creditors notify applicants of "adverse action" within thirty days of such action. 15 U.S.C. § 1691(d). "Adverse action" means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The notification of adverse action must be in writing. 15 U.S.C. § 1691(d)(2). The Simmermans allege that the ECOA's notice requirements were violated when neither Bank One nor its agents notified the Simmermans that their original application for a mortgage loan had been denied and was replaced by a mortgage offer with terms quite different from the original application. [Adv. Doc. 1, ¶¶ 11–21].

■ Significantly, these requirements of the ECOA only apply to "creditors." The ECOA defines a "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew or continue credit." 15 U.S.C. § 1691a(e). This statutory provision clearly covers some assignees but only those who "participate[ ] in the decision to extend, renew or continue credit." *Id.* Consequently, a reasonable interpretation of the statutory provision would be that an assignee who does not participate in the decision to extend credit to a borrower, but, instead, only obtains the loan through an assignment after the origination, is not a "creditor" subject to liability under the ECOA.

The court's interpretation is supported by the ECOA's implementing regulation and the comments to it that further define "creditor" for purposes of the Act. The ECOA's implementing regulation (Regulation B) states in pertinent part:

Creditor means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term includes a creditor's assignee ... who so participates.... A person is not a creditor regarding any violation of the Act or this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation, before becoming involved in the credit transaction.

12 C.F.R. § 202.2(*l*) (2011). Even more helpful is the official staff interpretation of Regulation B that notes the following:

The term creditor includes all persons participating in the credit decision. This may include an assignee or potential purchaser of the obligation who influences the credit decision by indicating whether or not it will purchase the obligation if the transaction is consummated.

12 C.F.R. § 202.2(*l*) (Supp. I). Regulation B and the official staff interpretation make clear that an assignee must somehow participate in or at least influence the "credit decision" to be held liable as a creditor. Further support for this interpretation is given by the comments of the Board of Governors of the Federal Reserve System in relation to a 2003 amendment of § 202.2(*l*) [8]:

... commenters asked the Board to clarify that a potential assignee that establishes terms of general applicability for credit extensions that it may acquire, but does not otherwise participate in setting the terms of individual loans, is not a creditor for purposes of the regulation. The [amendment] clarifies that the definition of creditor includes those who make the decision to deny or extend credit, as well as those who negotiate and set the terms of the credit with the consumer. But a potential assignee who establishes underwriting guidelines for its purchases but does not influence individual credit decisions is not a creditor.

68 FR 1314401, 2003 WL 1202439 (Regulation B, Docket No. R–1008) (Mar. 18, 2003).

The statutory language together with the implementing regulation and the comments thereto support that an assignee may only be held liable as a "creditor" when the assignee influences the credit decision by, for example, participating in the decision to extend credit or by negotiating the terms of the credit. Without being involved in or influencing the credit decision, the assignee will not be held liable as a creditor under the ECOA. *See, e.g., Wright v. Castle Point Mortgage*, 2006 WL 1468678, at *4–5 (D.N.J. May 24, 2006) (concluding that the complaint failed to state an ECOA cause of action against an assignee of a mortgage loan when the complaint was void of any factual allegations that the company was directly involved in the violation and the assignment occurred after the loan was originated).

Turning to this case, the complaint is bereft of any allegations that the Defen-

8. The wording of § 202.2(*l*) was changed effective April 15, 2003 to clarify the definition of creditor. 68 FR 1314401, 2003 WL 1202439 (Regulation B, Docket No. R–1008) (Mar. 18, 2003). The language was changed from "regularly participates in the decision of whether or not to extend credit" to "regularly participates in a credit decision, including setting the terms of the credit." *Id.*

**64**

dants participated in or otherwise influenced the decision by Bank One to extend credit to the Simmermans or the terms of that credit.[9] Instead, the complaint alleges that Defendants became involved only when they acquired the loan in 2004, over three years after the loan origination. Because there are no allegations in the complaint that Defendants in any way influenced the decision to extend credit to the Simmermans or the terms of that credit, they are not the type of assignees who are "creditors" for purposes of the ECOA. Consequently, the Simmermans' third cause of action for violation of the ECOA is dismissed.

### E. Fourth Cause of Action (Against Ocwen): Violations of the Fair Debt Collection Practices Act

The Simmermans' final cause of action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, an act designed to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The cause of action is directed solely at Defendant Ocwen. The Simmermans assert that certain FDCPA provisions were violated by Ocwen when it attempted to collect on the mortgage debt without authorization as the holder or owner of the note and when it attempted to collect amounts already paid [Adv. Doc. 1, ¶ 94]. Ocwen asserts that the claim must be dismissed because: 1) the statute of limitations has expired; 2) Ocwen, a loan servicer, is not a "debt collector" to whom the

FDCPA applies; and 3) the res judicata effect of the confirmed plan prevents the Simmermans from pursuing the FDCPA claim. The court agrees with Ocwen that the FDCPA's one year statute of limitations expired before the Simmermans filed their complaint. As such the Simmermans' fourth cause of action is dismissed without the need to reach the issue of whether Ocwen is a "debt collector" or the other issues presented in the motion to dismiss.

■ The FDCPA's statute of limitations is contained in 15 U.S.C. § 1692k(d) which states that "[a]n action to enforce any liability created by this subchapter may be brought … within one year from the date on which the violation occurs." Courts in the Sixth Circuit have concluded that an FDCPA action is time-barred when based on the debt collector's filing of a proof of claim that occurred more than one year before the FDCPA lawsuit was filed unless additional violating conduct occurred after the proof of claim filing. *See Kline v. Mortgage Electronic Security Systems*, 659 F.Supp.2d 940, 951–52 (S.D.Ohio 2009) (finding a debtor-mortgagor's FDCPA claim time-barred to the extent it was premised on the debt collector's filing of a proof of claim more than one year before the initiation of the FDCPA lawsuit; however, the FDCPA cause of action survived to the extent that the complaint contained additional allegations of improper collection actions outside of bankruptcy subsequent to the filing of the

**9.** The Simmermans attempt to cast ECOA liability on Defendants by asserting that Defendants "regularly extend … credit" which is part of the definition of "creditor" found in 15 U.S.C. § 1691a(e) [Adv. Doc. 1, ¶ 24]. However, the remainder of the statutory definition, coupled with Regulation B and the comments thereto, make clear that to be held liable as an assignee, the assignee must, in some manner, influence the decision to ex-

tend credit to the consumer at issue. Furthermore, the Simmermans' bald assertion that Defendants regularly extend credit without further factual support would not pass muster under *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (noting that a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels, conclusions and/or a formulaic recitation of the elements of a cause of action).

proof of claim); *Rice–Etherly v. Bank One, N.A. (In re Rice–Etherly)*, 336 B.R. 308, 313 (Bankr.E.D.Mich.2006) (concluding that an FDCPA cause of action filed by a debtor three years after the filing of the proof of claim was time-barred).[10]

In the Simmermans' complaint, the most recent act alleged to violate the FDCPA is the filing of an amended proof of claim in the current bankruptcy case, an act which occurred on October 22, 2008 [Adv. Doc. 1, ¶¶ 37, 41, 69, 94]. The Simmermans did not file their adversary complaint until February 6, 2011, long after the one year statute of limitations expired. Nonetheless, in response to Ocwen's motion to dismiss, the Simmermans argue that "Ocwen's unlawful attempts to collect on [the Simmermans'] mortgage are ongoing and continuing." [Adv. Doc. 23, p. 13]. However, in making the argument, the Simmermans do not point to a single offending act by Ocwen that occurred after the filing of the proof of claim nor did the court find any allegations of subsequent violating acts in its review of the Simmermans' complaint.[11] Such a vague assertion of "ongoing and continuing" or "repeated" offending acts, without further factual detail, is not sufficient to survive dismissal

under *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (noting that a complaint does not suffice if it tenders "a naked assertion" devoid of "further factual enhancement").

Because the allegations in the Simmermans' complaint do not demonstrate that Ocwen engaged in improper conduct within the one year window of the FDCPA's statute of limitations, the court concludes that the FDCPA cause of action is time-barred and, therefore, dismissed.

### CONCLUSION

For the foregoing reasons, the court DISMISSES the following causes of action in the Simmermans' complaint [Adv. Doc. 1]: a) the third cause of action for violations of the Equal Credit Opportunity Act; and b) the fourth cause of action for violations of the Fair Debt Collection Practices Act.

In all other respects, the Defendants' partial motions to dismiss [Adv. Docs. 11 & 14] are DENIED.

**SO ORDERED.**

---

**10.** It should be noted that *Rice–Etherly* was criticized by the District Court for the Southern District of Ohio in the *Kline* decision with respect to a separate issue concerning the FDCPA. In *Rice–Etherly*, the bankruptcy court determined that an FDCPA cause of action is unavailable in bankruptcy if premised on conduct that occurred within the bankruptcy case like the filing of a proof of claim. *See Rice–Etherly*, 336 B.R. at 311–313 (concluding that debtor's FDCPA claim is barred because the conduct is remedied or governed by the Bankruptcy Code and, consequently, an FDCPA claim cannot be premised on the filing of a proof of claim). The District Court for the Southern District of Ohio disagreed with the *Rice–Etherly* court and held that there is no conflict between the Bankruptcy Code and the FDCPA nor does the Code impliedly repeal the FDCPA in bank-

ruptcy. *See Kline*, 659 F.Supp.2d at 949–951. These cases highlight a significant dispute among the courts. However, this court need not address the issue because the parties did not raise it and the court is dismissing the Simmermans' FDCPA claim on other grounds.

**11.** The only act mentioned in the complaint that occurred after the filing of the proof of claim is Ocwen's issuing of an account statement dated November 17, 2008 [Adv. Doc. 1, ¶ 40 and Ex. C]. However, the Simmermans do not allege that the issuing of this statement violated the FDCPA. Even if it were so alleged, the lawsuit was still initiated more than two years later, long after the one year statute of limitations expired with respect to that act.