[Cite as *Bank of Am., N.A. v. Pasqualone*, 2013-Ohio-5795.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Bank of America, N.A., | : | |
| Plaintiff-Appellee, | : | No. 13AP-87 |
| | | (C.P.C. No. 12CVE04-5225) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| James E. Pasqualone, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 31, 2013

*Manley Deas Kochalski, LLC,* and *Matthew J. Richardson,* for appellee.

*Thomas L. Sooy,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} In this mortgage foreclosure case, defendant-appellant, James E. Pasqualone ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for relief from a default judgment granted in favor of plaintiff-appellee, Bank of America, N.A. ("appellee"). For the reasons that follow, we affirm.

I. Facts and Case History

{¶ 2} On May 18, 2011, appellant executed a promissory note in favor of MFC Mortgage, Inc. of Florida ("MFC") in the amount of $100,000 in connection with a loan made by MFC in the same amount. On the same date, appellant executed a mortgage on real property located at 5540 Town Hill Dr., Canal Winchester, Ohio ("the real property"). The mortgage described appellant as the mortgagor and borrower and identified MFC as

the lender. The mortgage additionally identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee and described MERS as a "separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (May 18, 2011 Mortgage, 1.)

{¶ 3}   On March 6, 2012, MERS, through a vice-president, executed a document titled "Assignment of Mortgage" ("the assignment"), which purported to assign all beneficial interest under the mortgage to appellee.

{¶ 4}   On April 24, 2012, appellee initiated this action by filing a complaint for foreclosure. In its complaint, appellee alleged that the mortgage was executed in connection with the note and that both the note and the mortgage were in default. Appellee further alleged that it was "*a person entitled to enforce the Note, pursuant to Section 1303.31 of the Ohio Revised Code*," and that the mortgage was given to secure the note. (Emphasis added.) (Complaint at ¶ 8.) Finally, appellee alleged it had satisfied all conditions precedent to acceleration of the note and had declared the entire balance due and payable. Along with the complaint, appellee filed with the court the following documentary evidence: (1) a copy of the original note naming appellant as the borrower and MFC as the lender, containing an indorsement from MFC to appellee and a blank indorsement signed by an assistant vice-president of appellee; (2) a copy of the original mortgage naming appellant as the mortgagor, MERS as the mortgagee, and MFC as the lender; (3) a copy of an assignment of the original mortgage naming MERS as assignor, appellee as assignee, and MFC as the lender; and (4) a copy of a Preliminary Judicial Report, prepared by the First American Title Insurance Company, reflecting the original mortgage in favor of MERS, as nominee for MFC Mortgage, Inc., its successors and assigns, as assigned to appellee.

{¶ 5}   Appellee sought judgment against appellant in the amount of the sum it alleged was unpaid on the note ($99,380.19, plus interest dating from November 1, 2011) and an order foreclosing the mortgage and ordering sale of the premises to satisfy the amounts due it. Appellant was served by ordinary mail when service of the complaint by certified mail failed.

{¶ 6}   On July 11, 2012, appellee moved for default judgment against appellant. Attached to its motion for default judgment, appellee filed an affidavit signed by Carol

Ann Yagusee, assistant vice-president of appellee, who averred that the copies of documents filed were true and correct copies of appellee's business records and that appellee had possession of the note. On August 10, 2012, the court granted the motion and entered judgment and a decree in foreclosure finding appellant liable for the unpaid amount of the note and ordering foreclosure and sale of the real property. Appellant did not timely appeal the judgment. Appellee prosecuted the matter further to accomplish a sheriff's sale of the property. On December 7, 2012, the sheriff conducted a public sale of the real estate, and appellee submitted the highest and best bid for the property.

{¶ 7}   On the same day as the sheriff's sale, December 7, 2012, appellant appeared for the first time in the action and filed a motion pursuant to Civ.R. 60(B) seeking relief from the default judgment of foreclosure that had been granted nearly four months earlier. Appellant asserted that he was entitled to relief from the judgment pursuant to Civ.R. 60(B).

{¶ 8}   On January 9, 2013, the trial court confirmed the sheriff's sale and issued a writ ordering the sheriff to put the purchaser in possession of the real property. On January 10, 2013, appellant moved for a stay of the proceedings, citing Civ.R. 62(A). That rule authorizes a trial court to "stay the execution of any judgment or stay any proceedings to enforce judgment pending the disposition of * * * a motion for relief from a judgment or order made pursuant to Rule 60." Civ.R. 62(A)

{¶ 9}   On January 24, 2013, the trial court entered a formal judgment denying appellant's Civ.R. 60(B) motion and further denying appellant's January 10, 2013 motion for stay. The court rejected appellant's challenge to appellee's standing to bring the foreclosure action and concluded that appellant had failed to demonstrate a meritorious defense to the foreclosure. It upheld the MERS assignment of the MFC mortgage to appellee. The court found that the fact that MERS was not named in the note did not preclude MERS, as nominee, from assigning the mortgage to appellee, citing cases from the Fifth and Sixth District Courts of Appeals, holding that, where a note refers to the mortgage and the mortgage refers to the note, the clear intent of the parties is to keep the note and mortgage together. *See Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-000002, 2009-Ohio-4742, ¶ 31-36, and *Mtge. Electronic Registration Sys., Inc. v. Vascik*, 6th Dist. No. L-09-1129, 2010-Ohio-4707, ¶ 25. The court concluded that MERS

acted only as the nominee or agent of the lenders, as demonstrated by the mortgage itself, which included the following provision:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower * * * but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests.

(Mortgage, 4.)

{¶ 10} The trial court concluded that appellant was not entitled to Civ.R. 60(B) relief because he had not demonstrated the existence of a meritorious defense as required by *GTE Automatic Elec., Inc. v. ARC Industries, Inc.,* 47 Ohio St.2d 146 (1976).

{¶ 11} In addition, the trial court denied appellant's motion to stay as moot.

{¶ 12} On February 1, 2013, appellant filed a notice of appeal from the January 24, 2013 judgment. Thereafter, on March 11, 2013, he moved the trial court for a stay of execution of the foreclosure decree. The trial court issued an order granting a stay pending the filing of a supersedeas bond. Appellant did not, however, file the requisite bond within the time set by the court. Appellant states in his brief that the sheriff then removed appellant from the real property.

{¶ 13} In this appeal, appellant asserts the following four assignments of error.

> [1.] THE TRIAL COURT ERRED IN ABSTAINING FROM CONDUCTING AN ANALYSIS OF THE ROLE THAT THE MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC. PLAYS IN THE MORTGAGE LENDING PROCESS.
>
> [2.] THE TRIAL COURT, IN DENYING THE APPELLANT'S UNOPPOSED MOTION TO VACATE JUDGMENT, ERRED IN HOLDING THAT THE PLAINTIFF POSSESSED THE REQUISITE STANDING TO HAVE COMMENCED THIS FORECLOSURE PROCEEDING.
>
> [3.] THE TRIAL COURT ERRED IN CONFIRMING THE SHERIFF'S SALE OF THE PROPERTY IN QUESTION PRIOR TO RULING ON THE APPELLANT'S MOTION TO VACATE JUDGMENT.
>
> [4.] THE TRIAL COURT ERRED IN NOT RENDERING A DECISION ON THE APPELLANT'S MOTION FOR TEMPO-RARY STAY OF EXECUTION OF JUDGMENT PRIOR TO

THE APPELLANT BEING EVICTED FROM HIS PROPERTY AND ULTIMATELY DENYING SAID MOTION DESPITE THE APPELLANT HAVING BEEN APPROVED FOR A SUPERSEDEAS BOND.

## II. Standard of Review

{¶ 14} Appellant has appealed the trial court's denial of his Civ.R. 60(B) motion. "[A] party seeking relief from judgment under Civ.R. 60(B) 'must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time[.]' " *PHH Mtg. Corp. v. Santiago*, 10th Dist. No. 11AP-562, 2012-Ohio-942, ¶ 11, quoting *GTE* at 150. Moreover, a movant must establish all three of these requirements to obtain relief from judgment. *Flagstar Bank, FSB, v. Hairston*, 10th Dist. No. 12AP-679, 2013-Ohio-1151, ¶ 7. We review trial court decisions on Civ.R. 60(B) motions pursuant to an abuse-of-discretion standard of review. *Id.* at ¶ 6. We will not reverse the trial court's decision absent a finding that the trial court acted arbitrarily, unconscionably or unreasonably. *Id.* In addition," '[i]f a Civ.R. 60(B) motion is premised upon issues which could have been raised on appeal, a trial court does not abuse its discretion by denying such motion.' " *Nkurunziza v. Nyamusevya,* 10th Dist. No. 11AP-222, 2011-Ohio-6133, ¶ 12, quoting *Doe v. Trumbull Cty. Children Servs. Bd.*, 28 Ohio St.3d 128 (1986), paragraph two of the syllabus.

{¶ 15} Although we are considering the trial court's denial of a Civ.R. 60(B) motion, the alleged meritorious defense appellant has raised is an issue of standing. For purposes of appellate review, a question involving standing is typically a question of law and, as such, it is to be reviewed de novo. *ProgressOhio.org, Inc. v. JobsOhio*, 10th Dist. No. 11AP-1136, 2012-Ohio-2655, ¶ 8, citing *League of United Latin Am. Citizens v. Kasich,* 10th Dist. No. 10AP-639, 2012-Ohio-947, ¶ 21–23. "Whether established facts confer standing to assert a claim is a matter of law. We review questions of law de novo." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, ¶ 90, citing *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 4.

{¶ 16} Applying either standard, we conclude the trial court did not err in denying appellant's Civ. R. 60(B) motion.

## III. Analysis

{¶ 17} The grounds for relief stated in Civ.R. 60(B)(1) through (5) are as follows:

> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
>
> (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (5) any other reason justifying relief from the judgment.

{¶ 18} Appellant argued in the trial court that he met the second prong of the *GTE* analysis as Civ.R. 60(B) (1), (2), (4), and (5) applied. In this appeal, however, appellant has not addressed the question whether one of these grounds for relief existed. Rather, appellant argues in his first and second assignments of error that appellee did not have standing to initiate the foreclosure for the following reasons: (1) MERS did not have legal authority to assign the mortgage that appellant executed to appellee; and (2) in executing a mortgage naming MERS as the mortgagee (albeit in a "nominee" capacity) and contemporaneously executing a promissory note naming a different party as the lender, the parties in this action separated the mortgage and the note, making the mortgage unenforceable. In his reply brief, he further argues that appellee's standing is a jurisdictional requirement that can never be waived, citing *Fed. Home Loan Mtg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017. Appellant's first and second assignments of error thereby address only the question whether appellant had a meritorious defense—not the existence of grounds for relief under Civ.R. 60(B)(1) through (5). Likewise, the trial court only addressed whether appellant had a meritorious defense.

Accordingly, as we address appellant's first and second assignments of error, we will begin our analysis with appellant's argument that he has a meritorious defense because appellee lacked standing to bring the foreclosure action.

### A. Schwartzwald is not dispositive

{¶ 19} As an initial matter, we address appellant's argument that the October 2012 decision of the Supreme Court of Ohio in *Schwartzwald* precludes a finding that appellee had standing to bring the foreclosure action. He argues that, "[i]n large part due to the aforementioned role of MERS in this mortgage loan transaction," appellee had not established that it was the real party in interest. (Appellant's Brief, 31.) He claims that the assignment of the mortgage by MERS was ineffective and invalid and that appellee therefore did not have standing to sue at the time it filed the foreclosure complaint.

{¶ 20} The Supreme Court held in *Schwartzwald* that "[t]he lack of standing at the commencement of a foreclosure action requires dismissal of the complaint." *Id.* at ¶ 40. In that case, the assignment of the note and mortgage to the plaintiff took place after the filing of the complaint. *Id.* at ¶ 7-11. By contrast, in this case, appellee presented evidence that the assignment of the note and mortgage took place prior to the filing of the complaint.[1] Moreover, in *Schwartzwald*, the Supreme Court did not address the role of MERS in a mortgage transaction or whether the involvement of MERS invalidates standing. Therefore, *Schwartzwald* is not dispositive to the issues raised in this appeal.

### B. Standing analysis begins with the note to determine whether appellee is the person entitled to enforce the note

{¶ 21} Appellant suggests that this court must focus our analysis on the assignment of the mortgage and whether appellee *owned* both the mortgage and the note at the time it filed the complaint. He argues that appellee lacked standing because MERS did not have authority to assign the mortgage to appellee, and, therefore, appellee had no interest in the mortgage at the time it filed the complaint. He further argues that appellee was never assigned an interest in the note. In his motion to vacate judgment, appellant argued "[i]f the plaintiff cannot prove it *owned* both the note and mortgage deed on the

---

[1] Attached to the complaint, appellee filed a copy of the assignment of the mortgage. It was dated March 6, 2012, indicating that the assignment took place four months prior to the filing of the complaint. Appellee also filed a copy of the note, which included two indorsements on the face of the note at the time the complaint was filed, thereby indicating the indorsements took place prior to the filing of the complaint.

date the complaint was filed, the complaint must be dismissed." (Emphasis added.) (Dec. 7, 2012, Motion to Vacate, ¶ 26.) Pursuant to appellant's suggestion, the trial court's analysis focused on the mortgage and the assignment thereof.

{¶ 22} Contrary to appellant's suggestion, however, we will begin our analysis by focusing on the note and whether appellee is the person entitled to enforce the note. In this regard, appellant argued in his motion to vacate that it was not clear whether appellee was, in fact, the holder[2] of the note (Motion to Vacate Judgment, ¶ 27) and, in his brief on appeal, he points us to several Ohio cases in support of the proposition that the current holder of a note is the real party in interest.

### C. Person entitled to enforce vs. Ownership

{¶ 23} Underlying appellant's argument that the mortgage assignment was invalid is his argument that appellee did not *own* the mortgage and the note. As will be explained below, we conclude that Chapter 1303 of the Ohio Revised Code, Ohio's version of Article 3 of the Uniform Commercial Code ("UCC"), applies to the note in this case. Therefore, it is important to consider R.C. Chapter 1303's treatment of the issues of ownership and of the person entitled to enforce the note. Pursuant to this chapter, the question of who has an ownership interest in a note is different from the question of who is entitled to enforce a note. Sometimes the person entitled to enforce the note and the owner of the note are one and the same. Sometimes they are not. Indeed, R.C. 1303.31(B) states that "[a] person may be a 'person entitled to enforce' the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." Furthermore, a plaintiff is not required to plead that it was the "owner" of the note and mortgage in its complaint. *See U.S. Bank Natl. Assn. v. Mitchell*, 6th Dist. No. S-10-043, 2012-Ohio-3732, ¶ 16; *Bank of New York Mellon Trust Co. v. Fox*, 6th Dist. No. OT-11-046, 2012-Ohio-6245, ¶ 15. "An assertion of ownership rights does not indicate entitlement to enforce an instrument, nor does a lack of ownership necessarily prevent a person from being entitled to enforce an instrument." *Mitchell* at ¶ 16.

---

[2] Pursuant to the Uniform Commercial Code, as adopted in Ohio, a holder is a person entitled to enforce a note. R.C. 1303.31(A)(1). However, non-holders may also be entitled to enforce a note if they meet the criteria outlined in R.C. 1303.31(A)(2) or (3).

{¶ 24} The importance of determining whether a plaintiff is the person entitled to enforce a note under the UCC, and the effect of that legal determination, was recently addressed by the United States Bankruptcy Appellate Panel for the Ninth Circuit:

> A thorough understanding of the concept of a "person entitled to enforce" is key to sorting out the relative rights and obligations of the various parties to a mortgage transaction. In particular, the person obligated on the note – a "maker" in the argot of Article 3 [R.C. Chapter 1303][3]– must pay the obligation represented by the note to the "person entitled to enforce" it. UCC § 3-412 [R.C. 1303.52]. Further, if a maker pays a "person entitled to enforce" the note, the maker's obligations are discharged to the extent of the amount paid. UCC § 3-602(a) [R.C. 1303.67(A)]. Put another way, if a maker makes a payment to a "person entitled to enforce," the obligation is satisfied on a dollar for dollar basis, and the maker never has to pay that amount again. *Id. See also* UCC § 3-602(c) [R.C. 1303.67(A)].
>
> If, however, the maker pays someone other than a "person entitled to enforce" – even if that person physically possesses the note the maker signed – the payment generally has *no* effect on the obligations under the note. The maker still owes the money to the "person entitled to enforce," Miller & Harrell, *supra*, ¶ 6.03[6][b][ii], and, at best, has only an action in restitution to recover the mistaken payment. *See* UCC § 3-418(b) [R.C. 1303.58(B)].

*In re Veal*, 450 B.R. 897, 910 (Bankr.9th Cir.2011). *See also HSBC Bank USA, N.A. v. Thompson*, 2d Dist. No. 23761, 2010-Ohio-4158, ¶ 71-72, quoting *Adams v. Madison Realty & Development, Inc.*, 853 F.2d 163, 168 (3d Cir.1988) ("[F]rom the maker's standpoint: 'it becomes essential to establish that the person who demands payment of a negotiable note, or to whom payment is made, is the duly qualified holder.  Otherwise, the obligor is exposed to the risk of double payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the instrument.' "). The relevant provisions of R.C. Chapter 1303 mirror the UCC sections discussed in *Veal*, providing that, subject to certain limitations, "an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the

---

[3] Throughout this decision, when we reference general UCC sections, we will include in brackets Ohio's comparable Revised Code section.

instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged" R.C. 1303.67(A).[4] Consequently, in a promissory note default case, once the court determines that a plaintiff is the person entitled to enforce the note, and judgment is entered against a defendant on that basis, the defendant is generally protected from being subject to subsequent claims for default on the same note to the extent payment is made to the person entitled to enforce the note whether by the proceeds of the mortgage foreclosure sale or otherwise. Therefore, a debtor's concern with who is the person entitled to enforce a note is paramount.

{¶ 25} However, as the court further explained in *Veal*, the question of *ownership* of a note is not the debtor's concern:

> This distinction [between an owner of a note and a person entitled to enforce a note] further recognizes that the rules that determine who is entitled to enforce a note are concerned primarily with the maker of the note. They are designed to

---

[4] R.C. 1303.67 states:

> (A) Subject to division (B) of this section, an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under section 1303.36 of the Revised Code by another person.
>
> (B) The obligation of a party to pay the instrument is not discharged under division (A) of this section under either of the following circumstances:
>
> (1) A claim to the instrument under section 1303.36 of the Revised Code is enforceable against the party receiving payment and either of the following applies:
>
> (a) Payment is made with knowledge by the payor that payment is prohibited by injunction or similar process of a court of competent jurisdiction.
>
> (b) In the case of an instrument other than a cashier's check, teller's check, or certified check, the party making payment accepted, from the person having a claim to the instrument, indemnity against loss resulting from refusal to pay the person entitled to enforce the instrument.
>
> (2) The person making payment knows that the instrument is a stolen instrument and pays a person it knows is in wrongful possession of the instrument.

> provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation. UCC § 3-602 (a), (c) [R.C. 1303.67(A)]. By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay). Under established rules, the maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note. Or, to put this statement in the context of this case, the Veals [as the makers of the note] should not care who actually owns the note – and it is thus irrelevant whether the note has been fractionalized or securitized – so long as they do know who they should pay. Returning to the patois of Article 3, so long as they know the identity of the "person entitled to enforce" the note, the Veals should be content.

*Veal* at 912-13.[5] *See also In re Smoak*, 461 B.R. 510, 518 (Bankr.S.D.Ohio2011) ("[B]ecause it has been established that Bank of NY Mellon is the holder of the Note, the Smoaks, as the maker of the Note, need not be concerned with who the owner of the Note is, but only that payments are being delivered to a person with the right to enforce the note."); *In re Simmerman*, 463 B.R. 47, 60 (Bankr.S.D. Ohio 2011) ("While a debtor has the right to challenge whether the creditor filing a proof of claim is the holder of the note, a debtor generally lacks standing to challenge who the owner of the note is because it does not impact who is entitled to enforce the note and who may file the proof of claim.").

{¶ 26} Therefore, particularly in this day and age of high volume and complex transactions involving promissory notes and mortgages, it is imperative that a court determine whether a plaintiff is the person entitled to enforce a note in order to protect debtors from multiple judgments on the same debt.

### D. R.C. Chapter 1303 applies to Negotiable Promissory Notes

{¶ 27} The concept of "person entitled to enforce a note" is only relevant if a promissory note is negotiable. If a promissory note meets the definition of "negotiable,"

---

[5] With respect to ownership issues, the *Veal* court explained that "[i]nitially, a note is owned by the payee to whom it was issued. If that payee seeks either to use the note as collateral or sell the note outright to a third party in a manner not within Article 3, [then] Article 9 [R.C. Chapter 1309] of the UCC governs that sale or loan transaction and determines whether the purchaser of the note or creditor of the payee obtains a property interest in the note." *Veal* at 913, citing UCC § 9-109(a)(3). *See* R.C. 1309.109(A)(3).

then relevant provisions of R.C. Chapter 1303 will apply. Therefore, as a starting point, we must determine whether the note in question is a negotiable instrument.

{¶ 28} R.C. 1303.03(A) states that a note is negotiable if it is an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise, if it meets all of the following requirements:[6]

> (1) It is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
>
> (2) It is payable on demand or at a definite time.
>
> (3) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain any of the following:
>
> (a) An undertaking or power to give, maintain, or protect collateral to secure payment;
>
> (b) An authorization or power to the holder to confess judgment or realize on or dispose of collateral;
>
> (c) A waiver of the benefit of any law intended for the advantage or protection of an obligor.

{¶ 29} Ohio courts, including our own, have generally held that a note secured by a mortgage is a negotiable instrument.[7] *See U.S. Bank Natl. Assn. v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 23 ("Ohio's version of the Uniform Commercial Code ("UCC"), governs the creation, transfer, and enforceability of negotiable instruments, including notes secured by mortgages on real estate."); *Wright-Patt Credit Union, Inc. v. Byington*, 6th Dist. No. E-12-002, 2013-Ohio-3963, ¶ 11 ("Ohio's version of the Uniform Commercial Code governs who may enforce negotiable instruments, including promissory notes secured by mortgages on real estate."); *U.S. Bank, N.A. v. Bennett*, 7th Dist. No. 11

---

[6] The statute contains an exception providing that "[a] promise or order * * * is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this chapter." R.C. 1303.03(D).

[7] For a comprehensive overview of how the UCC applies to notes secured by mortgages on real estate see the Report of the Permanent Editorial Board for the Uniform Commercial Code: Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes, November 14, 2011, American Law Institute and the National Conference of Commissioners on Uniform State Laws.

MA 40, 2012-Ohio-2700, ¶ 19 ("First and foremost, a note secured by a mortgage is widely considered to be a negotiable instrument.").

{¶ 30} We conclude that the promissory note before us meets the statutory definition and, therefore, is a negotiable instrument subject to relevant provisions of R.C. Chapter 1303. The note contains a promise to pay the lender the amount of $100,000, plus interest. In addition to providing for monthly payments, the note further specified that payment in full was due on or before June 1, 2041. *See Mohammad v. Awadallah*, 8th Dist. No. 97590, 2012-Ohio-3455, ¶ 17 (holding that a note "contain[ed] the indicia generally found in a negotiable instrument as defined by R.C. 1303.03," where it provided for a fixed amount of money to be paid, plus interest, to a specific individual, at a specific date); *Parmore Group v. G&V Invests., Ltd.*, 10th Dist. No. 05AP-756, 2006-Ohio-6986, ¶ 17 (holding that a note "contain[ed] the indicia generally found in a negotiable instrument as defined by R.C. 1303.03," where it contained a promise to pay a fixed amount on or before a specified date). Moreover, the note does not require any other undertakings that would render the note nonnegotiable. Having determined that the note is a negotiable instrument, we must next determine whether appellee is the person entitled to enforce the note.

### *E. Definition of "person entitled to enforce"*

{¶ 31} Pursuant to R.C. 1303.31(A), a "person entitled to enforce" an instrument means any of the following persons: (1) the holder of the instrument, (2) a non-holder in possession of the instrument who has the rights of the holder, or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 1303.38 or division (D) of Section 1303.58 of the Revised Code.[8] Appellant argues that appellee is not a holder of the note; therefore, we will first consider whether appellee is a holder of the note pursuant to R.C. 1301.31(A)(1).

{¶ 32} With respect to a negotiable instrument, a "holder" means: "The person in possession of a negotiable instrument that is payable either to bearer or to an identified

---

[8] As noted, both a non-holder in possession of an instrument who has the rights of a holder, as well as a person not in possession of a note meeting criteria in R.C. 1303.38 or division (D) or R.C. 1303.58, may be entitled to enforce a note. R.C. 1303.31(A)(2) and (3). If, in these situations, the court does not properly determine that the plaintiff is entitled to enforce the note, a judgment in foreclosure against the debtor could result in the plaintiff foreclosing on a house, and several years later the debtor being subject to a separate judgment for the amount of the promissory note to the entity entitled to enforce the note.

person that is the person in possession." R.C. 1301.201(B)(21)(a).[9] Determining whether a plaintiff-creditor is a holder requires physical examination not only of the face of the note but also of any indorsements.[10]

{¶ 33} In this case, appellee included an affidavit averring that it had possession of the note and that the copy it presented is true and correct. The note contains two indorsements. The first indorsement was made by MFC making the note payable to the order of appellee. This constitutes a "special indorsement" under R.C. 1303.25(A). "An instrument, when specially indorsed, becomes payable to the identified person." R.C. 1303.25(A). Based on this indorsement, the note became payable to appellee as an identified person and, because appellee is the identified person in possession of the note, it was the holder of the note. The note also contains a second indorsement, made by appellee. The second indorsement is a blank indorsement, which makes the instrument payable to the bearer. R.C. 1303.25(B). Under this indorsement, appellee still qualifies as a holder of the note because it is the person in possession of a negotiable instrument that is payable to the bearer. R.C. 1301.201(B)(21)(a). We conclude that appellee is the holder of the note and, therefore, appellee is a person entitled to enforce the note pursuant to R.C. 1303.31(A)(1).

### F. Debtor's denials and defenses to the right to payment of a person entitled to enforce a note

{¶ 34} Under R.C. 1303.36(B),[11] if the validity of each signature on a note is admitted or proved pursuant to R.C. 1303.36(A),[12] a person entitled to enforce the note is

---

[9] The section of R.C. Chapter 1301 providing for general definitions under the UCC was amended in 2011 by the General Assembly through Am.H.B. No. 9. The amendments provided in that legislation became effective after the note and mortgage relevant to this case were executed but prior to the filing of the foreclosure action. For purposes of analysis, we conclude that the definition of the "holder" of a negotiable instrument under the prior law is substantially the same as the definition under the current law. Therefore, for purposes of analysis, we cite the amended version of the statute.

[10] Indorsements can be included in an allonge attached to the note. An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Black's Law Dictionary* 88 (9th Ed. 2009).

[11] The right to payment of a person entitled to enforce the note, who also has the status as a holder in due course, is subject to the defenses of the obligor stated in division (A)(1) of R.C. 1303.35 but is not subject to defenses of the obligor stated in division (A)(2) of R.C. 1303.35 or to claims in recoupment stated in division (A)(3) of R.C. 1303.35 against a person other than the holder. R.C. 1303.35(B) and 1303.36(B). Holder in due course status is defined in R.C. 1303.32.

[12] R.C. 1303.36(A) provides that "[u]nless specifically denied in the pleadings, in an action with respect to an instrument, the authenticity of, and authority to make, each signature on an instrument is admitted. If the

entitled to payment unless the debtor proves a defense or claim in recoupment as outlined in R.C. 1303.35.[13]  R.C. 1303.35 states that the right to enforce the obligation of a party to pay an instrument is subject to the defenses and claims in recoupment outlined therein. Appellant argues in this case that he had a meritorious defense because: (1) the note appeared to have been *assigned* to an unidentified third party pursuant to appellee's blank indorsement; and (2) MERS did not have the authority to *assign* the mortgage and therefore did not have authority to assign the note.

{¶ 35} In several recent cases, this court has held that "because a debtor is not a party to the assignment of a note and mortgage, the debtor lacks standing to challenge their validity." *Deutsche Bank Natl. Trust. Co. v. Whiteman*, 10th Dist. No. 12AP-536, 2013-Ohio-1636, ¶ 16, citing *LSF6 Mercury REO Invests. Trust Series 2008-1 v. Locke*, 10th Dist. No. 11AP-757, 2012-Ohio-4499, ¶ 28-29. *See also JPMorgan Chase Bank, N.A.*

---

validity of a signature is denied in the pleadings, the burden of establishing validity is on the party claiming validity but the signature is presumed to be authentic and authorized[.]"  However, *see* R.C. 1303.67(B).

[13] Defenses and claims in recoupment are set forth in R.C. 1303.35, which provides, in part, as follows:

> (A) Except as stated in division (B) of this section, the right to enforce the obligation of a party to pay an instrument is subject to all of the following:
>
> (1) A defense of the obligor based on any of the following:
>
> (a) Infancy of the obligor to the extent it is a defense to a simple contract;
>
> (b) Duress, lack of legal capacity, or illegality of the transaction that, under other law, nullifies the obligation of the obligor;
>
> (c) Fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms;
>
> (d) Discharge of the obligor in insolvency proceedings.
>
> (2) A defense of the obligor set forth in a section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract;
>
> (3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument, but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

*v. Romine*, 10th Dist. No. 13AP-58, 2013-Ohio-4212, ¶ 13. The defendant-debtors in *Locke*, *Whiteman*, and *Romine* challenged the validity of assignments of the mortgages in their cases. *See Locke* at ¶ 24; *Whiteman* at ¶ 16; *Romine* at ¶ 14. However, our holding that the assignments could not be challenged was not made in the context of considering whether the plaintiffs were entitled to enforce the note.[14] Accordingly, at this time, we limit our holdings in *Locke*, *Whiteman*, and *Romine* to the extent that, in cases where R.C. Chapter 1303 applies, a debtor may challenge the assignment of a note (by negotiation[15] or transfer[16]) if such challenge fits the criteria of a denial, defense or claim in recoupment as outlined in R.C. 1303.36 or 1303.35.

{¶ 36} Having considered appellent's alleged meritorious defenses, we determine that they do not fit the criteria of a denial, defense or claim in recoupment outlined in R.C. 1303.36 or 1303.35. Therefore, appellee's right to payment and right to enforce the obligation of appellee to pay the promissory note is not subject to appellant's alleged meritorious defenses.

### G. Ownership of the note

{¶ 37} As noted above, much of appellant's argument is based on his assertion that appellee has not established that it owns the note. He asserts that MFC is still the owner of the note. R.C. 1303.36(C) states that "[a] person who takes an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds." However, pursuant to R.C. 1303.35(C), an "obligor may not assert against the person entitled to enforce the instrument * * * a claim of another person to the instrument under division (C) of section

---

[14] In *Locke*, the appellants did assert that the note was not the "wet ink" original. *Locke* at ¶ 8. However, said assertion was made in the second assignment of error, whereas our holding that assignments cannot be challenged was made in the context of discussing the third assignment of error regarding the assignment of the mortgage. In *Whiteman*, although the appellant argued at one point that the appellee did not hold the note, he did not dispute that Deutsche Bank possessed the note and that it was indorsed in blank. An entity which possesses a note indorsed in blank is a holder entitled to enforce the note. *See Bank of Am. v. McLaughlin*, 6th Dist. No. E-11-057, 2012-Ohio-2341, ¶ 19; *In re Smoak* at 517-18. Furthermore, his challenge primarily focused on the robo-signing of the assignment of mortgage and ownership of the note for lack of compliance with the Pooled Services Agreement. *Whiteman* at ¶ 15. Likewise, in *Romine*, the appellant also argued that the plaintiff was not the holder of the note; however, there was no dispute the plaintiff was in possession of the note and the note was indorsed in blank. *Romine* at ¶ 3. Nevertheless, the premise of his argument was that the assignment of the mortgage was never effectuated.
[15] Notes are negotiated pursuant to R.C. 1303.21.
[16] Notes are transferred pursuant to R.C. 1303.22.

1303.36 of the Revised Code."[17] Therefore, appellant, as the obligor, may not assert against appellee, as the person entitled to enforce the instrument, a claim of a property or possessory right (including ownership) in the note or its proceeds on behalf of another person, MFC. For these reasons, it is not necessary for us to conduct a deeper analysis of MERS' business practices and the role it has played in the assignment transaction.[18]

### H. Mortgage is an accessory to the note

{¶ 38} Finally, notwithstanding the fact that it is not necessary to conduct a deeper analysis of MERS business practices, we will address appellant's argument that the note and mortgage were separated when the note identified MFC as the lender, but the mortgage identified MERS as the mortgagee. "Under Ohio common law, where a promissory note is secured by a mortgage, the note is evidence of the debt and the mortgage is a mere incident of the debt." *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 32, citing *Edgar v. Haines,* 109 Ohio St. 159, 164 (1923), and *Kernohan v. Manss,* 53 Ohio St. 118, 133 (1895). In *Carpenter v. Longan*, 83 U.S. 271, 275 (1872), the United States Supreme Court held:

> All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt [the note] the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action [a mortgage[19]] standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When

---

[17] The statute contains an exception providing that "the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument." R.C. 1303.35(C). At this point in time, there is no indication that MFC (or any other entity for that matter) is asserting an ownership interest in the note, or that it, rather than appellee, is entitled to enforce the note.

[18] Nevertheless, this case should not be construed as the definitive word on MERS. Nor should it be construed as our approval of MERS and its authority. Each case, and the role MERS plays therein, is different. Therefore, analysis should be conducted on a case by case basis.

[19] A "chose in action" is defined as "[a] property right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort" or "[t]he right to bring an action to recover a debt, money, or thing." *Black's Law Dictionary* 275 (9th Ed.2009). "In equity a mortgage is but a chose in action, given to secure the performance of some act, usually the payment of money." *McQuade v. Rosecrans*, 36 Ohio St. 442, 447 (1881).

> the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents.

{¶ 39} Recently, this court held that negotiation of a note secured by a mortgage operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered. *Gray* at ¶ 32. "In other words, '[t]he physical transfer of the note indorsed in blank, which the mortgage secures, constitutes an equitable assignment of the mortgage, regardless of whether the mortgage is actually (or validly) assigned or delivered.' " *Id.*, quoting *Deutsche Bank Natl. Trust Co. v. Najar,* 8th Dist. No. 98502, 2013-Ohio-1657, ¶ 65.

{¶ 40} In *Gray*, we observed that R.C. Chapter 1309, Ohio's version of Article 9 of the UCC, incorporates the common law doctrine of equitable assignment at R.C. 1309.203(G). *Id.* at ¶ 33, citing UCC Official Comment, Section 9-203, Comment 9 (2000); *Aurora Loan Servs., L.L.C. v. Louis,* 6th Dist. No. L-10-1289, 2012-Ohio-384, ¶ 34; *U.S. Bank Natl. Assn. v. Marcino,* 181 Ohio App.3d 328, 2009-Ohio-1178, ¶ 53 (7th Dist.). We also referred to the recent answer of the Permanent Editorial Board for the Uniform Commercial Code to the question, "[w]hat if a note secured by a mortgage is sold * * * but the parties do not take any additional actions to assign the mortgage that secures payment of the note, such as execution of a recordable assignment of the mortgage?" *Id.*, citing 9A Hawkland, *Uniform Commercial Code Series,* Section 9-203:16[Rev] (2012). The Board's explanation bears repeating here:

> U.C.C. § 9–203(g) [1309.203(G)] explicitly provides that, in such cases, the assignment of the interest of the seller or other grantor of a security interest in the note automatically transfers a corresponding interest in the mortgage to the assignee * * *. ([A] "security interest" in a note includes the right of a buyer of the note.) * * * *[T]he UCC is unambiguous: the sale of a mortgage note * * * not accompanied by a separate conveyance of the mortgage securing the note does not result in the mortgage being severed from the note.*

(Emphasis added.) For these reasons, we reject appellant's argument that the note and mortgage were separated and find that, when the note was indorsed to appellee and then subsequently in blank, the mortgage was equitably assigned to appellee.

{¶ 41} We overrule appellant's first and second assignments of error.

{¶ 42} In his third assignment of error, appellant argues that the trial court should not have confirmed the sheriff's sale of the real property on January 9, 2013, without having first ruled on appellant's December 7, 2012 Civ.R. 60(B) motion. Because we have affirmed the trial court's denial of appellant's Civ. R. 60(B) motion, this assignment of error is rendered moot. Nevertheless, we are aware of no authority for the proposition that the filing of a Civ.R. 60(B) motion operates to stay execution of a foreclosure judgment that is the subject of the motion, and appellant has not proffered any authority supporting that proposition.

{¶ 43} We also conclude that appellant's fourth assignment of error contending that the trial court should have granted additional time for appellant to post a supersedeas bond to stay his eviction during the pendency of this appeal is moot.

{¶ 44} The record reflects that, on February 1, 2013 and, pursuant to Civ.R. 62(A), appellant again moved for a stay pending this appeal. On February 20, 2013, the court granted that motion, contingent upon appellant posting a supersedeas bond in the amount of $4,969. On February 27, 2013, appellant moved the court for an additional 14 days to post the bond and, on February 28, 2013, the parties stipulated that appellant would be evicted from the property no earlier than March 12, 2013. Appellant was, however, unable to post the required bond by that date.

{¶ 45} On March 9, 2013, appellant sought additional time to post the bond, representing to the court that he had obtained initial approval of a bond but that he needed additional time to meet several conditions imposed by the surety. Appellant did not, however, ever post a bond. In his brief, appellant suggests that he ultimately was "removed from his property by the Franklin County Sheriff." (Appellant's Brief, 39.)

{¶ 46} Under these facts, we conclude, as stated above, that appellant's fourth assignment of error is moot. Moreover, even if not moot, we do not find that the trial court abused its discretion in failing to stay the execution of the foreclosure decree.

## IV. Conclusion

{¶ 47} Finally, we deny as moot appellee's motion to strike, pursuant to our recent decision in *Deutsche Bank Natl. Trust Co. v. Finney*, 10th Dist. No. 13AP-373, 2013-Ohio-4884, in which we held the *Schwartzwald* case refers to the exercise of jurisdiction, not subject-matter jurisdiction.

{¶ 48} For the foregoing reasons, appellee's motion to strike is moot, appellant's first and second assignments of error are overruled, and appellant's third and fourth assignments of error are moot. Therefore, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Motion to strike moot; judgment affirmed.*

TYACK, J., concurs.
SADLER, J., concurs separately.

SADLER, J., concurring separately.

{¶ 49} I agree with the majority's disposition of the four asserted assignments of error and the judgment affirming the trial court's decision. Because I believe the majority's decision includes analysis and discussion beyond what is necessary to determine the first and second assignments of error, I concur separately.

{¶ 50} As framed by the majority, the issue raised by appellant in the first and second assignments of error is whether appellant demonstrated the existence of a meritorious defense as required by *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976). The only meritorious defense asserted by appellant is appellee's alleged lack of standing to initiate the instant foreclosure action. I agree with the majority's conclusion that, as a person entitled to enforce the note at issue, appellee had standing to initiate this foreclosure action. However, I do not find the facts at issue here necessitate a limitation of this court's prior holdings as the majority chooses to do in paragraph 35. Furthermore, I find no basis for the inclusion of footnote 18 because, as noted by the majority, "it is not necessary for us to conduct a deeper analysis of MERS' business practices and the role it has played in the assignment transaction."

{¶ 51} For the above reasons, I concur separately.

_____